The Board of Chosen Freeholders of the County of Middlesex

*v.*

The President &c. of the State Bank at New Brunswick.

The state treasurer of New Jersey, being informed that the State Bank at New Brunswick, in which he had a deposit of $33,900 of state funds, was in an embarrassed condition, drew on that fund, and deposited his draft for collection in the Trenton Bank, in which he also kept a state account. The amount of the draft was credited to the treasurer, and it was forwarded for collection the same day, received by the State Bank the next day, charged to the treasurer and credited to the Trenton Bank. At one o'clock on that day the State Bank closed its doors on account of insolvency, and is now in the hands of a receiver.— *Held*, that the Trenton Bank only acted as a collecting agent for the accommodation of the state, in the matter, and was not chargeable with the loss of the amount of the draft; but, even if it were otherwise liable, the failure of the treasurer to communicate to the Trenton Bank his knowledge or information of the failing condition of the State Bank, would, in equity, discharge the former bank.

On application by petition to establish the rights of parties.

*Mr. J. P. Stockton,* attorney-general, for the state.

*Mr. B. Gummere,* for the Trenton Banking Company.

THE CHANCELLOR.

On the 30th of March, 1877, there were on deposit in the State Bank at New Brunswick, to the credit of the treasurer of the state of New Jersey, $33,900 of state funds, placed there by that officer, and on that day there was due from that bank to the Trenton Banking Company the sum of $432.50, funds subject to the draft of that company. On that day the state treasurer, having been informed that the

31

State Bank was in an embarrassed and precarious condition, with a view to securing part of his deposit, made his draft on the bank, and deposited it for collection with the Trenton Banking Company, with which he had an account as a depositor in his official capacity. The banking company at once, on his credit, credited his account with the amount of the draft, and the same day forwarded the draft to the State Bank for collection. On the next day it was received by that bank and charged to the treasurer, and credited to the banking company, but at one o'clock in the afternoon of that day the bank ceased business, on account of its insolvency, and closed its doors. A few days afterwards it was declared insolvent by this court, and a receiver appointed. The banking company proved its claim for the $432.50 before mentioned, but made no claim for the amount of the draft.

The question presented is, whether it or the state shall prove the claim for the amount of the draft, or, in other words, whether the loss to be sustained in respect to the amount represented by the draft is to be borne by the state or the banking company. It is quite clear that it is to be borne by the former. The amount of the draft was credited by the banking company to the treasurer, on the credit of the latter merely. The transaction was a mere collection for the accommodation of the treasurer, and the credit was given according to the custom of banks in such cases, on the obvious understanding that if the draft should not be collected the credit should be cancelled. No liability to pay the amount of the draft to the treasurer was incurred by the banking company in the premises, except in case of failure to discharge its duty with respect to collection. It did not, by the credit given to the treasurer, make the claim its own, or in anywise guarantee collection. Under the circumstances, it was the mere agent of the treasurer for the collection of the draft. *Morse on Banks 388 ; Nat. Gold Bank* v. *McDonald, 51 Cal. 64.* And it discharged its whole duty in the collection. It did not wait till the next day, but for-

warded the draft on the same day on which it was received. It is not alleged that it anywise failed in its duty as an agent for collection. But if it had incurred liability by the mere act of giving the credit, the fact that the treasurer, when he deposited the draft, did not communicate to the banking company that which he knew and it did not know, to wit, that the State Bank was in an embarrassed and failing condition, would, in equity, discharge it from liability.

Nor will the fact that it was credited with the amount by the State Bank, under the circumstances, avail to charge the banking company with the draft. The credit was not a payment. Moreover, it was made by the officers of the State Bank at a time when they must have known of the insolvency of their bank, and that it would, in a few minutes afterwards, comparatively, close its doors on that account, and go into the hands of a receiver.

The debt is not the debt of the banking company, but of the state, and may be proved on behalf of the latter.